J-S16039-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :  PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| TINA MARIE PHILLIPS | : |
| | : |
| Appellant | : No. 809 WDA 2025 |

Appeal from the Judgment of Sentence Entered January 13, 2025
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000137-2022

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:                          **FILED: JULY 16, 2026**

Tina Maria Phillips ("Phillips") appeals from the judgment of sentence imposed following her convictions for homicide by vehicle, aggravated assault by vehicle, involuntary manslaughter, reckless driving, careless driving— unintentional death, driving on right side of roadway, driving vehicle at safe speed, and damage to real property by operation of motor vehicle prohibited.[1] We affirm.

We summarize the relevant factual and procedural history in this matter as follows.  On October 25, 2021, Phillips was driving, with her mother Patricia Phillips ("Patricia") as the front-seat passenger, when her vehicle veered off the roadway and into the front yard of 180 Andrews Road.  There, Phillip's vehicle struck and killed Chad Varner ("Varner"), a United States postal

---

[1] **See** 75 Pa.C.S.A. §§ 3732(a), 3732.1(a), 3736, 3715(b), 3301(a), 3361, 3717(c); 18 Pa.C.S.A. § 2504(a).

worker, as he was delivering mail to the house. The Commonwealth charged Phillips with, *inter alia*, the above-listed offenses. The matter proceeded to a bench trial on October 16-17, 2024. Patricia passed away prior to trial; therefore, the parties stipulated to the introduction of three separate statements Patricia made about the incident before her death. **See** N.T., 10/16/24, at 97-100; **see also** Commonwealth Exhibit 6 (Patricia's Statements). In her statement to Greene County Regional Police Sergeant Nathan Ferree ("Sergeant Ferree"), Patricia stated that Phillips began accelerating quickly while driving and that Patricia yelled at her to slow down. Patricia noticed that Phillips was unresponsive so she began trying to pull Phillips' leg off the accelerator but was unable to do so. Patricia stated that after they left the roadway and came to a stop, Phillips "seemed out of it and was trying to move imaginary things around on the dash of the car." Commonwealth Exhibit 6.

In her interview with defense investigator Huey Gillespie, Patricia stated that on the morning of the crash, she realized she was out of cigarettes so she asked Phillips to take her to the store. Phillips informed her that she was not feeling well, but Patricia insisted. After shopping at several stores, Phillips stopped to get pizza because she still did not feel well and needed to eat something. As they were driving home on Andrews Road, Patricia was concerned that Phillips was driving too fast but she could not get Phillips' attention. Patricia yelled at Phillips and attempted to push her leg off the gas pedal, but Phillips was "unresponsive to her and was simply staring out the

front of their vehicle." *Id*. Patricia stated that after the accident, she and Phillips exited the vehicle and checked on Varner. She described Phillips at that time as "relatively normal, made sense, was able to talk to her[,] at that point she was alert and made complete sense." *Id*.

Last, in her statement to defense attorney Marissa Stewart, Patricia recalled Phillips felt nauseated and was vomiting at home the morning of the incident, but Patricia insisted that Phillips drive her to Wal-Mart and Dollar General. She stated that Phillips "seemed fine" while shopping and driving between stores. *Id*. They stopped at Domino's and Phillips ate pizza in the car. Patricia described Phillips as "quiet" on the way home and she believed that Phillips "was mad at [her]." *Id*. Patricia stated that Phillips "turned off the main road and [she] did not slow down. Patricia said it felt like [Phillips] was going too fast and it felt like [she] was speeding up. Patricia yelled at [Phillips] to slow down" and tried to push her leg off the gas pedal. *Id*. After the vehicle crashed, Phillips "came to and was looking for her glasses." *Id*.

In addition to Patricia's stipulated statements, the Commonwealth presented several witnesses. Sean McCollum ("McCollum") testified that he was driving on Andrews Road when Phillips and Patricia flagged him down and asked him to call 911 because Phillips "believed she hit someone." N.T., 10/16/24, at 49. There was no cellular service in that location, so McCollum drove back into town to call 911 from a landline telephone, and then returned to the scene approximately ten minutes later. McCollum stated Phillips told him that "she thought she had blacked out." *Id*. at 58. After learning Phillips

- 3 -

and her mother had not attempted to render any aid to Varner, McCollum located Varner in the nearby woods and administered CPR until firefighters arrived.

Seth Courtwright ("Courtwright"), a nurse and volunteer firefighter who arrived on the scene shortly after McCollum returned, testified that he asked Phillips what happened and she responded with "a very flat affect," meaning she showed little to no emotion. *Id*. at 71, 80. He further observed that she was able to stand and move around without issue. *Id*. at 71.

Sergeant Ferree testified that upon arrival at the crash scene, he observed "skid marks, some tire marks through some shrubs and a yard[, and] a bunch of debris." *Id*. at 154. Sergeant Ferree stated that Phillip's vehicle was "heavily damaged" and had crashed into a shed at the top of a wooded hill, approximately 100 feet from the curve in the roadway. *Id*. at 156, 161. Varner's body was also at the top of the hill, approximately twenty feet to the left of the crashed car. Sergeant Ferree asked Phillips if she had any recollection of the incident, and she stated that "she didn't remember anything . . . that she sometimes gets seizures or . . . diabetic seizures. . . , but that she hadn't had one in almost a year or longer." *Id*. at 157. Phillips further stated that she was supposed to take medication for her condition, but "that she hadn't been taking it." *Id*. at 157-58.

Paramedic Rayanne McDowell ("McDowell") testified that she spoke with Phillips, who had already exited her vehicle, and described her as "completely alert and oriented, walking around on the scene." *Id*. at 17. Phillips told

- 4 -

McDowell that she "did not remember the incident and ha[d] been having issues with her blood sugar." *Id*. McDowell tested Phillips' blood glucose level and it was elevated at 511; however, McDowell did not observe any signs that Phillips was experiencing diabetic ketoacidosis, and therefore she did not administer any insulin or medication. *Id*. at 18, 22. Furthermore, McDowell did not observe Phillips exhibiting any post-ictal, or "after seizure," symptoms. *Id*. at 43. McDowell stated that Phillips initially refused transport to the hospital for further medical care but eventually agreed.

Cary Amundson, M.D. ("Dr. Amundson"), an emergency room physician who treated Phillips at the hospital, testified that he reviewed her medical history, including her history of Type 2 diabetes and seizures, and noted that she had been prescribed two anti-seizure medications. Dr. Amundson did not perform an EEG on Phillips to confirm a seizure had occurred because the hospital did not have the necessary equipment. He tested her blood glucose level and it was elevated at 546; however, he did not observe any symptoms of diabetic ketoacidosis. *Id*. at 112. Phillips told Dr. Amundson that she had not slept well the night before and "didn't feel well while she was driving." *Id*. at 106. She further told him that "she remember[ed] waking up with EMS helping her out of the car." *Id*. at 130. Based on her medical history, her reported symptoms that he "took at face value," and her physical examination, Dr Amundson's "working diagnosis" that day was that Phillips "had seizure like activity [and] hyperglycemia." *Id*. at 107. He submitted a report to the

Pennsylvania Department of Transportation ("PennDOT"), informing them that Phillips suffered a seizure and should cease driving immediately.

Susan Albert ("Albert"), a nurse practitioner and Phillip's primary care provider, testified that she saw Phillips on November 1, 2021, for a follow-up appointment after the emergency room visit. Phillips told Albert that "she did not feel she had a seizure" because "it was nothing like the seizures that she has had in the past, and she did not have her typical post-ictal symptoms." *Id*. at 136. Phillips further told Albert that "she had not had a seizure in years and she has never had anything like this happen when she was driving." *Id*. At Phillips' request, Albert completed a form for PennDOT stating that Phillips did not have a seizure on October 25, 2021, and could resume driving. *See id*. at 137.

Trooper Jason Hatalsky ("Trooper Hatalsky"), who was qualified as an expert in collision analysis and reconstruction, testified that he examined the crash site and then analyzed the downloaded contents of Phillips' vehicle's "black box" recorder. N.T., 10/17/24, at 178, 181-82, 207. The black box recorder showed that Phillips' vehicle was traveling 70.8 miles per hour when it left the roadway, that Phillips applied the brakes and, at some point, had shifted the gear into neutral, and that the vehicle was traveling 32.3 miles per hour when it struck Varner. *Id*. at 221-22, 259. Trooper Hatalsky testified that the posted speed limit for Andrews Road was forty miles per hour, and that "the road is very narrow and . . . not marked with any markings, so there [are] no lane markings, there [are] no fog lines." *Id*. at 225-26. Based on

his investigation, Trooper Hatalsky concluded that Phillips "failed to negotiate a curve, left the roadway, struck a pedestrian and a tree, causing the death of the pedestrian." *Id*. at 227.

Phillips did not testify on her own behalf and presented no witnesses. At the conclusion of trial, the court found Phillips guilty of the above-listed offenses. On January 13, 2025, the trial court imposed standard range sentences of ten to twenty-three months' county incarceration on the homicide by vehicle conviction, and ten to twenty-three months' county incarceration on the involuntary manslaughter conviction, to run concurrently with one another. The court determined that, for sentencing purposes, the offense of aggravated assault by vehicle merged with the homicide by vehicle. On the remaining charges, the court imposed an aggregate fine of $775. Phillips filed a timely post-sentence motion and an amended post-sentence motion, which the trial court denied. Phillips filed a timely notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925.

Phillips raises the following issues for our review:

1. Did the [t]rial [c]ourt abuse its discretion and err by imposing a sentence of incarceration which in this case is a cruel and shocking sentence for this offender?

2. Did the [t]rial [c]ourt abuse its discretion and err by erroneously finding sufficient evidence or erroneously relying on contrary evidence?"

Phillips' Brief at 4.

In her first issue, Phillips argues that the trial court's imposition of a carceral sentence was "cruel and shocking," in violation of the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution. A challenge to a sentence alleging a violation of the cruel punishment clause implicates the legality of the sentence and cannot be waived. *Commonwealth v. Brown*, 71 A.3d 1009, 1016 (Pa. Super. 2013) (citation omitted). "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Hernandez*, 328 A.3d 1159, 1165 (Pa. Super. 2024) (citation omitted).

When reviewing such challenges, we observe:

> Article 1, Section 13 of the Pennsylvania Constitution provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." P.A. Const. art. I, § 13. The guarantee against cruel punishment contained in the Pennsylvania Constitution, Article 1, Section 13, provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution. The Eighth Amendment does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are **grossly disproportionate** to the crime.

*Commonwealth v. Lankford*, 164 A.3d 1250, 1253 (Pa. Super. 2017) (citations omitted, emphasis in the original).

The three-prong test for Eighth Amendment proportionality review is "guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the

same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id*. (citations omitted). This Court is not required to reach the second and third prongs of this test unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*.

Importantly, "[a] punishment authorized by a legislature violates the proscription against cruel and unusual punishment only if it is so disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice." *Commonwealth v. Carr*, 543 A.2d 1232, 1235 (Pa. Super. 1988) (citations omitted). Moreover, a "least restrictive means type analysis . . . has no place in the review of cruel and unusual punishment claims." *Id*. (quotation marks omitted).

Phillips argues that "[s]entences of incarceration for a first-time offender are not unheard of, but it is an unnecessarily cruel punishment in this case" and therefore "violates the Eighth Amendment of the United States Constitution and [section] 13 of the Pennsylvania Constitution." Phillips' Brief at 12. She avers that "she should receive a mitigated sentence and be permitted to serve any sentence she receives on house arrest, rather than through incarceration." *Id*. Phillips concedes that "sentences of incarceration are in the guidelines for the charges against [her,]" but contends that "it is not mandatory that the trial court sentence according to those guidelines if the circumstances surrounding the incident compellingly indicate that they should not be followed." *Id*. at 11-12.

The trial court considered Phillips' sentencing claim and found it lacked merit, reasoning:

> While it is true that [Phillips] had no prior criminal record and was an otherwise first time offender, those factors are addressed in the sentencing guidelines. There were no factors that would suggest a sentence in the mitigated or aggravated range was appropriate.
>
> Although we recognize that [Phillips'] conduct was not intentional, charges of involuntary manslaughter and homicide by vehicle do not contemplate intentional conduct, and we determine that the sentence imposed was appropriate.

Trial Court Opinion and Order, 5/29/25, at 4.

Although Phillips purports to challenge her sentence as a violation of the cruel punishment clause, she does not acknowledge, let alone address, the three-prong test for Eighth Amendment proportionality review. Rather, she simply argues that as a first-time offender, the sentencing guidelines should not apply to her and she should serve her sentence on house arrest instead of in jail. This argument would apply only to the first prong of the proportionality review—"the gravity of the offense and the harshness of the penalty." *Lankford*, 164 A.3d at 1253. However, as explained above, a "least restrictive means" argument, as Phillips advances here, "has no place in the review of cruel and unusual punishment claims." *Carr*, 543 A.2d at 1235 (rejecting appellant's claim that his sentence constituted cruel and unusual punishment because the sentencing court imposed a term of incarceration over a probationary term that would equally protect the public and

accommodate appellant's health issues). Based on her convictions for homicide by vehicle, graded as a felony of the third degree, and involuntary manslaughter, graded as a misdemeanor of the first degree, Phillips faced a maximum aggregate sentence of six to twelve years' incarceration. Given the seriousness of these convictions, which resulted in a man's death, we determine that Phillip's sentence of ten to twenty-three months' incarceration was not grossly disproportionate to the crime and does not violate the cruel punishment clause. Since Phillips failed to show that her sentence "led to an inference of gross proportionality," we have no obligation to continue with the proportionality review. *See Lankford*, 164 A.3d at 1253. We therefore conclude that Phillips' sentence is not violative of the Eighth Amendment to the United States Constitution and section 13 of the Pennsylvania Constitution. Accordingly, no relief is due on Phillips' first issue.

In her second issue, Phillips argues that the trial court abused its discretion "by erroneously finding sufficient evidence or erroneously relying on contrary evidence." Phillips' Brief at 4. As a threshold matter, we note that the manner in which Phillips phrased her second issue implicates both the sufficiency of the evidence and the weight of the evidence. Thus, we will address both claims.

Initially, we must determine whether Phillips' claim challenging the sufficiency of evidence on all charges is preserved for our review. This Court has explained that:

It is well-settled that the failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119. Arguments which are not appropriately developed are waived. When issues are not properly raised and developed in briefs, or when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof. Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived.

*Commonwealth v. Taylor*, 277 A.3d 577, 590-91 (Pa. Super. 2022) (quotation marks and citations omitted).

Although Phillips purports to challenge the sufficiency of the evidence on all her convictions, she does not present any arguments in her appellate brief regarding her convictions for aggravated assault by vehicle, involuntary manslaughter, reckless driving, careless driving—unintentional death, driving on right side of roadway, driving vehicle at safe speed, and damage to real property by operation of motor vehicle prohibited. Indeed, nowhere in the discussion section does Phillips even mention these charges except in a brief recitation of the procedural history. *See* Phillips' Brief at 13-15. This deficiency prevents us from conducting a meaningful review of the sufficiency of the evidence supporting these convictions. *See Taylor*, 277 A.3d at 590-91. We therefore conclude that Phillips has waived her challenge to the sufficiency of the evidence with respect to all of these charges. Accordingly, we will address Phillips' sufficiency challenge only with respect to her conviction for homicide by vehicle.

When considering a challenge to the sufficiency of the evidence:

[W]e evaluate the record in light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013)

(internal quotations and citations omitted).

The Crimes Code[2] defines homicide by vehicle as:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a).

---

[2] ***See*** 18 Pa.C.S.A. §§ 101-9546.

Importantly, an assertion that an appellant's "theory of the case" should have been credited over the Commonwealth's version of events "actually sounds in weight of the evidence . . . and is not truly a sufficiency challenge." ***Commonwealth v. Perez***, 93 A.3d 829, 840 (Pa. 2014) (citation omitted). Indeed, "a sufficiency of the evidence review ***does not*** include an assessment of credibility of testimony offered by the Commonwealth." ***Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa. Super. 2022) (citation omitted) (emphasis added). "An appellant's challenge to the sufficiency of the evidence must fail, where an appellant phrases an issue as a challenge to the sufficiency of the evidence but the argument that the appellant provides goes to the weight of the evidence." ***Id***.

Phillips does not dispute that she violated a law of this Commonwealth or that the violation resulted in a death. Instead, she challenges only the sufficiency of the evidence supporting the *mens rea* requirement of recklessness or gross negligence for homicide by vehicle. ***See*** Phillips' Brief at 13. In support of her purported sufficiency challenge, Phillips simply reiterates the testimony adduced at trial favorable to her, and asserts that "[t]his testimony all goes towards the defense's theory of the case" and "proves that this tragic accident was just that—an accident." Phillips' Brief at 15. We emphasize that an assertion that an appellant's theory of the case should have been credited over the Commonwealth's "actually sounds in weight of the evidence . . . and is not truly a sufficiency challenge." ***Perez***,

93 A.3d at 840. Thus, we conclude that because Phillips' purported sufficiency claim in fact goes to the weight of the evidence, her challenge to the sufficiency of the evidence must fail. **See Juray**, 275 A.3d at 1043.

Phillips further contends that the trial court "erroneously reli[ed] on contrary evidence." Since Phillips' arguments in her appellate brief discuss the weight of the evidence, and she challenged the weight of the evidence in both her post-sentence motion and Rule 1925(b) concise statement, we will address her weight claim. **See** Pa.R.A.P. 607(A).

Our standard of review when considering a challenge to the weight of the evidence is well settled:

> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict was against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

**Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Talbert**, 129 A.3d 536,

- 15 -

545 (Pa. Super. 2015) (brackets and citation omitted). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court." *Id*. at 546 (citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in the original).

Phillips argues that the bulk of the testimony presented at trial "indicated that there was a medical incident that caused the accident," and that if Phillips experienced a "seizure or medical episode [during] the accident [it] would not meet the required recklessness standard of the statute." Phillips' Brief at 14. She avers that testimony from McDowell, Courtright, Dr. Amundsun, Patricia, and Sergeant Ferree all suggested Phillips experienced a "medical incident that caused the accident," and that the trial court should

have rejected Albert's testimony to the contrary. *Id*. at 14-15. Phillips contends that all of the testimony she cites in her brief "goes towards the defense's theory of the case. It proves that this tragic accident was just that— an accident. It was caused by a medical issue with Phillips." *Id*. at 15.

The trial court considered Phillips' weight claim and found it meritless, reasoning, "[t]he verdict does not shock the conscience of the [c]ourt and certainly was clearly supported by the evidence. Again, we have fully considered the theory of the defense and rejected that notion." Trial Court Opinion and Order, 5/29/25, at 6.

After careful review, we discern no abuse of discretion by the trial court in denying Phillips' challenge to the weight of the evidence. As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *Id*.

Here, Phillips' claim that the verdict was against the weight of the evidence is premised on the trial court not crediting testimony that supported her assertion that she experienced a sudden seizure while driving, thus negating the *mens rea* necessary for a homicide by vehicle conviction. While the parties introduced Patricia's statements that Phillips was not feeling well

on the day of the crash and became unresponsive while driving, and the Commonwealth presented the testimony of certain witnesses which provided some support for Phillips' theory, the record is nevertheless replete with testimony that contradicted Phillips' theory. For example, McDowell, a paramedic who responded to the crash scene, testified that Phillips appeared completely oriented and alert, and did not exhibit any post-seizure symptoms. *See* N.T. 10/16/24, at 17, 22, 43. Further, nurse and volunteer firefighter Courtright described Phillips as having a "flat affect" after the crash, but was able to stand and move around without assistance. *Id*. at 70. Additionally, Dr. Amundson, who treated Phillips in the emergency department, did not observe any symptoms of diabetic ketoacidosis despite her elevated blood sugar level, but formed a working diagnosis of seizure-like activity and hyperglycemia based on Phillips' medical history and the symptoms she reported to him. *See id*. at 110-12. Similarly, Albert, Phillips' primary care provider, testified that Phillips told her she did not suffer a seizure and asked Albert to submit a form to PennDOT confirming this so that she could resume driving. *See id*. at 136-39. Lastly, Trooper Hatalsky stated that although Phillips' vehicle was traveling 70.8 miles per hour when it left the road, she applied the brake pedal as her vehicle crashed through shrubbery and struck Varner, which tended to negate her theory that she was having a seizure during the incident. *See* N.T., 10/17/24, at 221-22, 226-27.

Phillips is essentially asking this Court to reweigh the evidence, and to give all weight to testimony supporting her theory that she experienced a sudden seizure while driving, and to accord no weight to testimony that she was driving more than 70 miles per hour when her vehicle left the road but applied her brakes prior to hitting Varner, that she did not exhibit any post-seizure symptoms after the crash, and that Phillips herself told her primary care provider that she did not experience a seizure. This we cannot do, as this Court may not reweigh the evidence. **See Talbert**, 129 A.3d at 545-46 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the fact-finder, which was free to believe all, part, or none of the evidence and testimony and to determine credibility).

Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim. In this regard, we discern no abuse of such discretion. The trial court considered all of the testimony presented at trial and rejected Phillips' version of events, finding instead that Phillips acted recklessly or with gross negligence when she drove her vehicle at a high rate of speed off the road and into a yard, where she stuck and killed Varner as he delivered mail. Thus, as we discern no abuse of discretion by the trial court denying Phillips' weight challenge, this issue merits no relief.

For the foregoing reasons, we conclude that none of Phillips' claims merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/16/2026